J-S23007-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NUSHAR J. SCOTT | : | |
| | : | |
| Appellant | : | No. 1656 EDA 2025 |

Appeal from the Judgment of Sentence Entered May 12, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004604-2023

BEFORE: LAZARUS, P.J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.: **FILED AUGUST 12, 2026**

Nushar J. Scott appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, after a jury convicted him of first-degree murder,[1] conspiracy to commit first-degree murder,[2] carrying a firearm without a license,[3] and carrying a firearm on a public street or public property in Philadelphia.[4] Counsel has filed a motion to withdraw and an

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2502(a).

[2] *Id.* at § 903.

[3] *Id.* at § 6106(a)(1).

[4] *Id.* at § 6108.

accompanying ***Anders***[5] brief. Upon review, we affirm Scott's judgment of sentence and grant counsel's motion to withdraw.

The trial court set forth the facts of this case as follows:

At approximately 10:30 a.m. on November 18, 2022, Philadelphia police officers responded to a radio call for shots fired on the 7300 block of Rowland Avenue in Northeast Philadelphia. Upon arrival, police observed a garbage truck in the middle of Rowland Avenue, and the decedent, sanitation worker Ikeem Johnson, lying in the street suffering from multiple gunshots wounds to his head, chest, and legs. When medics arrived, [] Johnson was unresponsive, and he was pronounced dead at the scene. [] Johnson was shot approximately fifteen times. The medical examiner determined that [] Johnson's cause of death was multiple gunshot wounds, and his manner of death was homicide.

Upon investigation, police obtained surveillance video that captured the murder. Specifically, surveillance video revealed that two men, later identified as [Scott] and his co-defendant, Rasheen Trusty, traveled from Northern Liberties to Northeast Philadelphia on the morning of the murder in a Subaru Outback. [] Trusty was the driver of the Subaru, and [Scott] was the passenger.

Surveillance video revealed that, at approximately 10:20 a.m., [] Trusty parked the Subaru about a block away from Bleigh Avenue in Northeast Philadelphia, the street where [] Johnson was working as a sanitation worker. After [] Trusty parked the Subaru, [Scott] exited the vehicle, walked towards Bleigh Avenue, and eventually passed [] Johnson[.] [] [Scott] turned left on Rowland Avenue, walking away from [] Johnson.

Video revealed that a few moments later, [Scott] returned to Bleigh Avenue, where [] Johnson was still working. [Scott] then approached [] Johnson and began shooting at him. [] Johnson attempted to run away from defendant down Rowland Avenue, but [Scott] chased after [] Johnson, shooting at him continuously until [] Johnson collapsed. After [] Johnson fell, [Scott] stood over

_____

[5] ***Anders v. California***, 386 U.S. 738 (1967). ***See also Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).

- 2 -

him and shot him again in the head at close range. [Scott] used two guns to shoot [] Johnson.

Following the shooting, [Scott] immediately returned to the Subaru, which was caught on video driving around the area of the crime scene during the murder. [Scott] was not licensed to carry a firearm on the date [at] issue.

Trial Court Opinion, 9/9/25, at 2-5 (citations to record omitted).

On April 10, 2025, a jury found Scott guilty of the above offenses and, on May 12, 2025, the trial court imposed the mandatory sentence of life in prison without the possibility of parole for murder, in addition to concurrent sentences on the remaining charges. Scott was not present for sentencing because he refused to be transferred from the county prison. *See* N.T. Sentencing, 5/12/25, at 3-6. Scott filed a timely post-sentence motion, which the trial court denied on June 26, 2025. Scott filed a timely notice of appeal on July 9, 2025.

Prior to considering the merits of Scott's appeal, this Court must first determine whether counsel has complied with *Anders* in his request to withdraw from representation. *See Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa. Super. 2007) (en banc) (holding court must first examine counsel's request to withdraw before reviewing merits of underlying issues). Court-appointed counsel seeking to withdraw from representation on the basis that the appeal is frivolous must:

(1) petition the court for leave of withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) file a brief referring to anything that arguably might support the appeal[;] and (3) furnish a copy of the brief to the defendant and advise the

defendant of his [] right to retain new counsel or raise any additional points that he [] deems worthy of the court's attention.

*Id.*

Furthermore, a proper *Anders* brief must:

(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. Finally, this Court conducts a wholly independent review of the record to determine if there are any non-frivolous issues. *Commonwealth v. Flowers*, 113 A.3d 1246, 1249 (Pa. Super. 2015).

Upon review, we conclude that counsel's *Anders* brief and application to withdraw comply with the fundamental requisites of both *Anders* and *Santiago*. First, counsel states that he examined the record and references it throughout his brief to evaluate the meritoriousness of the appeal. Second, counsel's brief raised arguable points in support of the appeal. Third, counsel sent a copy of the brief to Scott, explaining his rights to retain new counsel or to participate in the appeal pro se. *See Goodwin*, *supra*. Finally, counsel's brief complies with the requirements of *Santiago*. Therefore, counsel has substantially complied with the requirements for withdrawing from representation and we turn to the merits of the claims raised in the *Anders* brief.

First, Scott claims the court erred in ruling that he forfeited his right to be present at sentencing and proceeding to sentence him in absentia. *See Anders* Brief, at 17. Consequently, Scott alleges the court improperly denied him the opportunity to engage in allocution, because the court did not provide any alternative means for Scott to participate in the hearing. *Id.* at 18. Scott contends that "the court's finding that he voluntarily absented himself was based upon the hearsay representations of prison personnel and not upon competent evidence" presented at a formal hearing. *Id.* He is entitled to no relief.

Generally, a defendant has the right to "be present at every stage of the trial including . . . at the imposition of sentence[.]" Pa.R.Crim.P. 602(A). "It is a right, however, which may be waived. It may be waived expressly, or waiver may be implied by a defendant's actions." *Commonwealth v. Sullens*, 619 A.2d 1349, 1351 (Pa. 1992), citing *Illinois v. Allen*, 397 U.S. 337, 342-43 (Pa. 1970). When this right is waived, the court may try or sentence the defendant in absentia. *See* Pa.R.Crim.P. 602(A). Pennsylvania courts have inferred waiver of this right in numerous cases where defendants, without excuse, were aware of a court date and yet voluntarily absented themselves. *See Sullens*, *supra*. *See also Commonwealth v. Wilson*, 712 A.2d 735, 737 (Pa. 1998) (it was reasonable for court to conclude that Appellant voluntarily waived right to be present when Appellant was fully aware of time of trial and did not appear at trial without excuse); *Commonwealth v. Johnson*, 734 A.2d 864, 866 (Pa. Super. 1999) (when

defendant aware of trial date and still not present without excuse, court may continue in absentia).

Here, Scott was aware of his sentencing date, as the Court advised him of it in open court after the jury rendered its guilty verdict on April 10, 2025. *See* N.T. Trial, 4/10/25, at 144. On the day of his sentencing, Scott refused to be transported to court. The court acknowledged this fact on the record and delayed sentencing pending receipt from the sheriff of a copy of the court refusals form. *See* N.T. Sentencing, 5/12/25, at 3-9. After receiving the form, the court placed the following on the record:

> THE COURT: Well, this is actually conclusive evidence that he has become a sovereign citizen.[6]
>
> The reason for his refusal is UCC Section 1-308, without prejudice. And where it says—place for him to sign, he refused to sign, and once again he wrote UCC 1-308.
>
> So[,] drawing on my experience with sovereign citizens, the citation to the Uniform Commercial Code is virtually conclusive evidence that he's following that credo which doesn't recognize the authority of the courts over his person, and that's the reason he's refused to attend. Okay.
>
> So[,] I will make—unless anybody wishes to present anything, I will make a—first of all, I want this copied. This will be made Court Exhibit Number 1 for purposes of his hearing.

---

[6] "Sovereign citizens" are anti-government extremists who believe that even though they reside in this country, they are separate or "sovereign" from the United States. As a result, they believe they do not have to answer to any government authority, including courts, taxing entities, motor vehicle departments, or law enforcement. *See* https://archives.fbi.gov/archives/news/stories/2010/april/sovereigncitizens_041310/domestic-terrorism-the-sovereign-citizen-movement (last visited 6/16/26).

[DEFENSE COUNSEL]: May I have a copy of that too?

THE COURT: Of course.

This is to the release staff and Michael Resnick, commissioner, subject is court refusals. You've been asked the reason for your refusal and stated UCC 1-308 without prejudice. This information will be provided by the judge hearing your case. If you refuse to print and sign your name . . . the box below will be checked for you indicating your refusal. And it says incarcerated person name and PP number print, it said refused to sign. And then below that signature, and once again it says UCC 1-308 without prejudice. Okay?

All right. So[,] I will make a finding defendant has willfully absented himself from these proceedings. This matter will proceed in absentia, which is authorized by the Rules of Criminal Procedure, as well as the Constitutions of the United States and Pennsylvania, so let's go ahead and proceed.

N.T. Sentencing, 5/12/25, at 8-9. Defense counsel did not object to the court's decision to sentence Scott in absentia. *Id.*

Applying the case law cited above, we conclude the court properly found that Scott waived his right to be present at the sentencing hearing, as he had notice of the sentencing date and willfully refused to attend. Accordingly, this claim is meritless.

Next, Scott claims that his first-degree murder conviction[7] was against the weight of the evidence and shocking to one's sense of justice. *Anders* Brief, at 18. Specifically, Scott argues that the video of the shooting was

_____

[7] While Scott purports to challenge the weight of the evidence as to all of his convictions, his post-sentence motion only challenges his first-degree murder conviction on this basis. Accordingly, he has waived any weight claims as to the remaining convictions. *See* Pa.R.Crim.P. 607(A) (claim verdict was against weight of evidence waived if not raised orally, on record, any time before sentencing, by written motion any time before sentencing, or in post-sentence motion).

- 7 -

blurry, there were no eyewitnesses, and he could not be clearly identified from the surveillance footage. *Id.* Furthermore, Scott asserts that finding his DNA on the shell casings "was an impossibility" because of the heat of the burning gunpowder. *Id.* Scott further challenges the accurate documentation of the plastic gloves containing his DNA and his purported possession of the pre-paid phone. *Id.* at 18-19.

> We adhere to the following standard of review:
>
> The weight of the evidence is exclusively for the finder of fact[,] who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgement for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. . . .
>
> [Furthermore, w]here the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003), quoting *Commonwealth v. Small*, 741 A.2d 666, 672-73 (Pa. 1999) (internal citations omitted). When "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." *Commonwealth v. Davidson*, 860 A.2d 575, 581 (Pa. Super. 2004) (citations omitted).

Under the Crimes Code, "[a] criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 Pa.C.S.A.

§ 2502(a). This Court has consistently held that pointing a gun at a person's head constitutes the requisite intent for first-degree murder. *See, e.g.*, *Commonwealth v. Cash*, 137 A.3d 1262, 1269 (Pa. 2016).

Here, Scott used two guns to shoot the victim approximately 15 times, shooting at the victim's head three times. *See* N.T. Trial, 4/8/25, at 159. Surveillance video showed Scott at the scene of the crime getting out of the Subaru, walking in the victim's direction, shooting the victim approximately 15 times, and returning to the Subaru. *See* Trial Court Opinion, 9/9/25, at 11-12. Furthermore, SEPTA surveillance footage corroborated that the path of travel of a man fitting Scott's description matched that of the Scott's phone. *Id.* Police found similar gloves to those found on the crime scene in the Brown Street apartment building Scott had entered and exited. *Id.* at 13. Scott's DNA was found on fired cartridge casings and the gloves. *Id.* at 8. Further, Scott's intent to commit first-degree murder was amply demonstrated where he aimed a gun at the victim's head at very close range. *Cash*, *supra*. Accordingly, the trial court did not abuse its discretion in concluding that Scott's conviction of first-degree murder did not shock its sense of justice and therefore was supported by the weight of the evidence.

Finally, Scott claims that all his convictions were based on insufficient evidence where the Commonwealth failed to prove his identity as the shooter beyond a reasonable doubt. Our standard of review for claims challenging the sufficiency of the evidence claim is as follows:

> [The Court must] evaluate the record in the light most favorable to the verdict[-]winner[,] giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused beyond a reasonable doubt.

*Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa. Super. 2013), quoting *Commonwealth v. Pettyjohn*, 64 A.3d 1072 (Pa. Super. 2013) (citations and quotation marks omitted). Circumstantial evidence may prove all elements of a crime. *See Commonwealth v. Ramtahal*, 33 A.3d 602 (Pa. 2011) (holding "Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence"); *Commonwealth v. Laird*, 988 A.2d 618 (Pa. 2010) (holding the circumstances surrounding the incident were sufficient to support the Appellant's convictions); *Commonwealth v. Cousar*, 928 A.2d 1025 (Pa. 2007) (holding there was circumstantial proof supporting the jury's verdict).

First, as previously stated, "[a] criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 Pa.C.S.A. § 2502.

Second, the Pennsylvania Crimes Code defines conspiracy as the following:

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
>> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime[.]

- 10 -

18 Pa.C.S.A. § 903(a)(1).

Third, a person violates subsection 6106(a)(1) of the Crimes Code when he "carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license[.]"  18 Pa.C.S.A. § 6106(a)(1).

Finally, a person violates section 6108 of the Crimes Code when he, "carr[ies] a firearm, rifle[,] or shotgun at any time upon the public streets or upon any public property in [Philadelphia]."  18 Pa.C.S.A. § 6108.

Viewing all the facts in the light most favorable to the verdict-winner, there is sufficient evidence to support all of Scott's convictions.  As noted above, Scott's DNA was found on the fired casings and on the black latex gloves found at the crime scene.  Video surveillance and location information from Scott's phone corroborated that Scott shot and killed the victim with two firearms in the middle of Rowland Avenue in Northeast Philadelphia.  **See** Trial Court Opinion, 9/9/25, at 8-14.  Scott possessed the requisite intent for first-degree murder because Scott pointed a gun directly at the victim.  **Cash**, **supra**.  Furthermore, Scott acted in concert with another party, Trusty, in furtherance of this act.  Finally, Scott did not possess a valid license to carry.  **See** N.T. Trial, 4/9/25 at 207-08.  Accordingly, he is entitled to no relief.

Finally, our independent review did not reveal any potentially meritorious claims that counsel either missed or misstated.  **See Flowers,**

*supra*.    Accordingly, we affirm Scott's judgment of sentence and grant counsel's petition to withdraw.

Judgment of sentence affirmed.  Petition to withdraw granted.


Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary


Date: 8/12/2026